# 24-0621-cv(L)
## 24-0623-cv(CON), 24-0636-cv(CON), 24-0640-cv(CON)

# United States Court of Appeals
### *for the*
# Second Circuit

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 Murray Corp., DBA New York Dolls, AAM HOLDING CORP., DBA Private Eyes, JNS VENTURES LTD, DBA Vixen, TWENTY WEST PARTNERS, INC., d/b/a Wonderland, 689 EATERY, CORP., DBA Satin Dolls, 725 EATERY, CORP., Substituting for MLB Enterprises, Corp., DBA Platinum Dolls,

*Plaintiffs-Appellants,*

– v. –

CITY OF NEW YORK, HON. ERIC ADAMS, as mayor of the City of New York, JAMES S. ODDO, as the Commissioner of Buildings, Department of Buildings of the City of New York,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT PETITION FOR PANEL REHEARING
## AND REHEARING *EN BANC*

EDWARD S. RUDOFSKY, ESQ.
ZANE AND RUDOFSKY
*Attorney for Plaintiffs-Appellants*
*59 Murray Enterprises, Inc., et al.*
Five Arrowwood Lane
Melville, New York 11747
(917) 913-9697

JEROME MOONEY, ESQ.
G. RANDALL GARROU, ESQ.
WESTON, GARROU & MOONEY
*Attorneys for Plaintiffs-Appellants*
*Club at 60th Street, et al.*
12121 Wilshire Boulevard
Los Angeles, California 90025
(310) 442-0072

*(For Continuation of Appearances See Inside Cover)*



ERICA T. DUBNO, ESQ.
FAHRINGER & DUBNO
*Attorney for Plaintiffs-Appellants*
*557 Entertainment Inc., et al.*
43 West 43rd Street
New York, New York 10036
(212) 319-5351

JEFFREY M. NYE, ESQ.
SSP LAW CO., LPA
*Attorney for Plaintiffs-Appellants*
*689 Eatery, et al.*
7373 Beechmont Avenue
Cincinnati, Ohio 45230
(513) 533-6714

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................... ii

RULE 26.1 DISCLOSURE STATEMENT ............................................... 1

PETITION FOR REHEARING AND/OR REHEARING EN BANC ................. 2

FACTS ............................................................................................... 3

REASONS FOR PANEL REHEARING ................................................... 7

    The Panel Overlooked its Obligation to Conduct De Novo Review of the Whole Record as Required by the Supreme Court ............................. 7

    The Panel Overlooked Significant Changed Circumstances in the 24 Years Since the 2001 Amendments were Enacted and Relevant Supreme Court Authority ............................................................ 8

    The Court Overlooked and Failed to Apply the "How Speech Will Fare" Test from Justice Kennedy's Controlling Concurrence in *Alameda Books* ................................................................... 10

    The Panel Overlooked Affirmed Findings of Fact that 60/40 Establishments Do Not Cause Secondary Effects ......................... 12

    The Panel Overlooked that the City has the Burden of Proving that the Challenged Restrictions Do Not Burden Substantially More Speech than Necessary to Further Governmental Interests Unrelated to the Suppression of Free Speech ............................................ 12

REASONS FOR REHEARING EN BANC ............................................ 14

    The Current Purpose Issue ........................................................ 14

    The How Speech Will Fare Issue .............................................. 16

    The Content-Neutral Issue ........................................................ 16

CONCLUSION ............................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*689 Eatery Corp. v. City of New York*,
    716 F. Supp. 3d 88 (S.D.N.Y. 2024) ............................................................7

*725 Eatery Corp. v. City of New York*,
    408 F. Supp. 3d 424 (S.D.N.Y. 2019) ......................................................6, 8

*Abie State Bank v. Weaver*,
    282 U.S. 765 (1931)...............................................................................8, 17

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984)...............................................................................7, 17

*Buzzetti v. City of New York*,
    140 F.3d 134 (2d Cir. 1998) .......................................................................11

*City of Los Angeles v. Alameda Books*,
    535 U.S. 425 (2002)............................................................... 2-3, 10, 16, 17

*City of Renton v. Playtime Theatres, Inc.*,
    479 U.S. 41 (1986).............................................................................10, 17

*For The People Theatres of NY, Inc. v. City of New York*,
    38 Misc. 3d 663 (Sup. Ct. N.Y. Co. 2012), *aff'd,* 131 A.D.3d 279
    (1st Dep't 2015), *rev'd on other grounds*, *For The People Theatres
    of N.Y., Inc. v. City of New York,* 29 N.Y.3d 340 (2019) .............................12

*FW/PBS v. City of Dallas*,
    493 U.S. 215 (1990)...............................................................................3, 18

*Marks v. United States*,
    430 U.S. 188 (1977)....................................................................................10

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)......................................................................................7

*TJS of New York, Inc. v. Town of Smithtown*,
    598 F.3d 17 (2d Cir. 2010) ....................................................................14, 15

*Turner Broadcasting System, Inc. v. FCC*,
    520 U.S. 180 (1997)..............................................................................12, 18

*United States v. Carolene Products Co.*,
   304 U.S. 144 (1938)..................................................................8, 17

*Young v. American Mini Theatres, Inc.*,
   427 U.S. 50 (1976)........................................................................15

*Young v. Simi Valley*,
   216 F.3d 807 (9th Cir. 2000) ....................................................3, 18


**Statutes & Other Authorities:**

F.R.A.P. 40...................................................................................2

James Buchwalter, *Validity of Zoning Laws and Ordinances as Dependent on Conditions, Circumstances, and Particular Property*, 101A
   C.J.S. Zoning and Land Planning § 18 .....................................14

Karger, *The Powers of the New York Court of Appeals* (3rd Ed.), § 81.................12

# RULE 26.1 DISCLOSURE STATEMENT

Each of Appellant 557 Entertainment Inc., Rainbow Station 7 Inc., Video Lovers Inc., Vishara Video, Inc., Jaysara Video, Inc., DCD Exclusive Video Inc., Club at 60th Street, Inc., 59 Murray Street Enterprises, Inc., AAM Holding Corp., JNS Ventures, Ltd., Twenty West Partners, Inc., 689 Eatery Corp. and 725 Eatery Corp. is a corporation; each of these Appellants has no parent corporation; and there is no publicly held corporation that owns 10% of more of the stock of any of these Appellants.

Appellant Jacaranda Club, LLC is a limited liability company. It has no parent corporation and no publicly held corporation owns a 10% or more interest in this Appellant.

**PETITION FOR REHEARING AND/OR REHEARING EN BANC**

Pursuant to F.R.A.P. 40 and Local Rule 40.1, Plaintiffs-Appellants move for panel rehearing of the attached Summary Order issued on July 8, 2025 (Menashi, C.J., Pérez, C.J., & Nathan, C.J.), upholding the constitutionality of a previously unenforced 24-year-old amendment to New York City's Zoning Resolution, which would close the vast majority of businesses in the City to the extent they offer constitutionally protected adult entertainment and expression, because the panel overlooked and misapprehended important points of fact and law, as described *infra*.

Plaintiffs-Appellants simultaneously suggest rehearing en banc should be granted because the proceeding involves the following questions of exceptional importance which have systemic consequences for the development of the law and administration of justice in the Second Circuit:

(1) In evaluating the constitutionality of a law which restricts free expression, should the Court consider whether the law still serves a substantial governmental interest when it is being applied—not just when it was enacted—where there have been substantial changes in the underlying facts since the law was enacted?

(2) Whether an adult zoning restriction must consider the actual impact on expression and how speech will fare, as articulated in Justice Kennedy's controlling concurrence in *City of Los Angeles v. Alameda Books,* 535 U.S.

425 (2002).

(3) Whether adult zoning laws are content-neutral or content-based restrictions on expression.

En banc review is also warranted because the panel decision upholding the procedural aspects of the City's adult business building permit scheme conflicts with and violates the standards for such ordinances articulated by the Supreme Court in *FW/PBS v. City of Dallas,* 493 U.S. 215 (1990). The Order also conflicts with the Ninth Circuit's decision in *Young v. Simi Valley,* 216 F.3d 807 (9th Cir. 2000), which invalidated schemes that allow private parties to exercise veto power over permit applications filed by adult businesses.

The Petition is timely filed within 14 days of the issuance of the Order.

## Facts

This civil rights action challenges the constitutionality of amendments to New York City's Zoning Resolution enacted in 2001, which, once enforced, will drastically reduce the public's access to constitutionally protected adult entertainment by forcing the closure of virtually all remaining outlets for presenting or selling such expression.

The City enacted its first zoning restrictions specifically for adult establishments in 1995 (the "1995 Amendments"), based on the Department of City Planning's 1994 Study, which found that the types of businesses studied caused

3

adverse secondary effects. At the time there were 177 adult businesses in New York City (107 in Manhattan). The 1995 Amendments imposed restrictions on where adult establishments could be located, size limitations, and signage restrictions.

The 1995 Amendments defined adult establishments as businesses where a "substantial portion" was dedicated to adult entertainment or materials. Those amendments survived judicial challenges in part because the vague term "substantial portion" was ultimately defined *by the City* as having at least 40 percent of the customer-accessible floor area regularly featuring adult entertainment for eating and drinking establishments, and at least 40 percent of adult floor space and stock for bookstores. This became known as the "60/40 Rule" and went into effect in 1998, when the City was able to begin enforcement of the 1995 Amendments.

The 60/40 Rule was a key component of the 1995 Amendments as it permitted constitutionally protected adult entertainment to continue at multiple locations throughout the City as long as the intensity of the adult use was reduced. Many adult businesses closed, thus significantly reducing the concentration of such businesses, a primary concern of the 1995 Amendments. Others, including Plaintiffs-Appellants herein, which are eating and drinking establishments and bookstores, invested substantial sums in complying with the 60/40 Rule. The remaining businesses modified their prior objectionable street presence by eliminating the "garish" signage, which was a concern underlying the 1995 Amendments. Contrary to the

4

finding of the panel, some also made significant modifications of their content and their services, which attracted a new clientele and changed the nature of the business.

In 2001 the City significantly amended its adult zoning regulations to completely eliminate the 60/40 Rule for eating and drinking establishments, and radically modified it for bookstores. Under the 2001 Amendments challenged in this litigation, *any* regularly featured adult entertainment renders an eating and drinking establishment an "adult establishment" and subject to the strict locational restrictions in the 1995 Amendments. The 2001 Amendments nominally retained the 60/40 Rule for bookstores (continuing to measure relative floorspace and stock) but added eight new considerations relating to bookstores' methods of operation (including whether stores can offer certain types of videos for sale or rental, and a comparison of the relative number of adult and non-adult titles), the presence of which would render a bookstore that complies with the 60/40 Rule to be non-compliant.

Unlike the 1995 Amendments, which were supported by extensive study of adverse secondary effects of concentrations of adult businesses, the 2001 Amendments were not the result of any investigation or finding that 60/40 businesses were causing any harm to their community.

The 2001 Amendments' mandatory termination requirements provide that 60/40 establishments operating in locations impermissible for adult use would be required to shut down or relocate within one year of when they became non-

5

conforming. However, under the City's Zoning Resolution, virtually all other non-conforming uses – including non-conforming bars – are not subject to mandatory termination. Thus, other non-conforming uses are effectively grandfathered in and allowed to remain in place—but not businesses that offer constitutionally protected expression.

Finally, this litigation challenges the "sensitive use veto" contained in the Amended Zoning Resolution, whereby businesses forced to relocate under the 2001 Amendments may be prevented from opening in certain permissible areas if a "sensitive use"—such as a house of worship or a school—applies to locate within 500 feet of the adult business' planned location.

This federal challenge was originally assigned to District Judge William H. Pauley, who preliminarily enjoined enforcement of the 2001 Amendments. Judge Pauley concluded that "Plaintiffs are more likely than not to succeed on the merits of their First Amendment free speech claims." *725 Eatery Corp. v. City of New York, 408 F.Supp.3d 424, 459 (S.D.N.Y. 2019)*. He also recognized that

> the adult-use regulations that are the subject of these now-revived constitutional challenges are a throwback to a bygone era. The City's landscape has transformed dramatically since Defendants last studied the secondary effects of adult establishments twenty-five years ago. As Proust might say, the "reality that [the City] had known no longer existed," and "houses, roads, [and] avenues are as fugitive, alas, as the years." Id. at 470, quoting Marcel Proust, Swann's Way, in Remembrance of Things Past.

6

Judge Pauley died and the case was assigned to Judge Lewis J. Liman, who ultimately upheld the 2001 Amendments and dismissed Plaintiffs' actions. *689 Eatery Corp. v. City of New York,* 716 F.Supp.3d 88 (S.D.N.Y. 2024).

**Reasons for Panel Rehearing**

**The Panel Overlooked its Obligation to Conduct *De Novo* Review of the Whole Record as Required by the Supreme Court**

Because of the implications to expression protected by the First Amendment, an appellate court "has an obligation to 'make an independent examination of the whole record' to make sure 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 499 (1984), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 284-85 (1964).

Nevertheless, the panel's ten-page Summary Order, issued after 23 years of state and federal litigation, a preliminary injunction, a trial, a 167-page district court decision, thousands of pages of records, extensive briefing and lengthy oral argument, seemingly overlooks the Court's obligation under *Bose Corp*. to make a *de novo* independent review of the whole record in order to avoid a forbidden intrusion on the field of free expression.

**The Panel Overlooked Significant Changed Circumstances in the 24 Years Since the 2001 Amendments were Enacted and Relevant Supreme Court Authority**

The panel found that the 2001 Amendments are "justified by substantial government interests" based solely on the facts and circumstances existing in 1994 on which the City purported to rely in enacting the amendments. However, the panel overlooked the undisputed fact that the world has changed significantly since 1994, when the City's studies found a substantial governmental interest to support restricting adult businesses. And, as the late Judge Pauley pointedly explained, the reality that the City "had known no longer existed." 408 F.Supp.3d at 470.

The Court also overlooked *Abie State Bank v. Weaver*, 282 U.S. 765, 772 (1931), cited in Plaintiffs-Appellants' opening brief at 31, which provides that a "police regulation, although valid when made, may become, by reason of later events, arbitrary and confiscatory in operation." *See also United States v. Carolene Products Co.,* 304 U.S. 144, 155 (1938) ("the constitutionality of a statute predicated upon the existence of a particular set of facts may be challenged by showing to the court that those facts have ceased to exist"). Thus, the Court overlooked the fact that even if a substantial governmental interest existed in the past (1994, 1995 or even 2001), it no longer exists now.

This is significant because if the panel had conducted a thorough and searching *de novo* review, as required by *Bose Corp.*, the record establishes, *inter alia*:

- o Between 2002 and 2012, nearly 40% of the City was rezoned. Much of that rezoning was in manufacturing areas, which include many of the limited permissible areas for adult uses. *See* Preliminary Injunction Joint Appendix in case 1:02-cv-8333 ("PJA") at 1486-1487, 1561-1574. The intensive rezoning continued after 2012. PJA 1489;

- o the undisputed and highly successful *dispersal* of adult establishments pursuant to the 1995 Amendments, eliminating the objectionable "concentration" of adult uses in Times Square and elsewhere; see, as to pre-1995 concentration, the Department of City Planning Commission Study, Dkt. No. 162-4 in 1:02-cv-4431, at 332, 335, and, as to effect of the 1995 Amendments, the Freeman Affidavit, Dkt. No. 62, in 1:02-cv-8331 at ¶¶ 11-22.

- o the *elimination* of garish exterior signage at all locations (including 60/40 businesses) in accordance with the unchallenged 1995 signage restrictions; see Consolidated Statement of Facts ("CSF"), Dkt 163 in case 1:02-cv-4431 at ¶¶ 31 and 200; and Exhibit 64 to Judicial Notice Request ("JNR") Case 1:02-cv-8333, Dkt. 147-9; and

- o the dramatic *reduction* in the number of establishments featuring adult entertainment and materials. [1]

---

[1] The evidence at trial was that when the 1995 Amendments were enacted, there were 177 establishments featuring adult entertainment or materials, which fell to 136 in 2000 (with 35 permitted to use 100% of their space and 101 restricted to 60/40). By 2022, the number was 42 (10 being 100%; 32 being 60/40). The drop in the number of such businesses in Manhattan was equally dramatic: From 107 at the time of enactment of the 1995 Amendments to 69 by 2000 (24 being 100% and 45 being 60/40), and to 23 in 2022 (4 being 100% and 19 being 60/40). Enforcement of the 2001 Amendments will mean that all 19 of the Manhattan locations will have to

**The Court Overlooked and Failed to Apply the "How Speech Will Fare" Test from Justice Kennedy's Controlling Concurrence in** *Alameda Books*

The panel cited considerations from *City of Renton v. Playtime Theatres, Inc., 479 U.S. 41 (1986)*, to determine whether this zoning law complies with the First Amendment. Order at 4. However, the panel's assessment overlooked Justice Kennedy's *controlling* concurring opinion in *City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 440 (2002),*[2] which added the test of "how speech will fare?" to the *Renton* analysis.

"How speech will fare," as explained by Justice Kennedy, was meant to measure the actual real-world impact of an adult zoning restriction and not merely to measure the number of hypothetical locations where such businesses could lawfully be established. That is why Justice Kennedy remanded *Alameda* to see whether the number of adult bookstores would, *as a practical matter,* be drastically reduced if they could no longer include adult video booths. In *Alameda* there were

---

terminate. See *CSF ¶¶ 161-173 in case 1:02-cv-8333, Dkt. 163, 57-59*.

[2] As Justice Kennedy's vote was essential to the Court's judgment and as his opinion concurring in the judgment ruled on the narrowest grounds, it is entitled to controlling weight. *See Marks v. United States, 430 U.S. 188, 193 (1977)* ( "[w]hen a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds").

*thousands* of lawful locations for such businesses, but the issue on "how speech will fare" was whether, as a practical matter, the total number of bookstore and video outlets would likely remain mostly unchanged if the law took effect.

Here, the failure to apply this test to the mandatory termination provisions was particularly egregious because the effect of applying those provisions to these few remaining businesses would be an immediate devastating impact on the public's access to this type of expression. This practical effect of the ruling should have been addressed.

The panel also found that the holdings of *Buzzetti v. City of New York,* 140 F.3d 134 (2d Cir. 1998), "largely resolve this case." Order at 5. However, *Buzzetti*, which was decided years before the 2001 Amendments and *Alameda*, did not consider how speech would fare or the impact on expression in the event 60/40 establishments were eliminated. Here, if the panel had applied the "how speech will fare" standard, it is clear that speech will fare horribly through enforcement of an aged and unnecessary zoning ordinance that effectively eliminates adult expression from Manhattan, which is the entertainment center of the world. This is especially true if enforced now, 24 years after being enacted, and given dispersal of 100% locations, the acknowledged elimination of offending exterior signage, and the vast reduction in the number of 60/40 locations.

11

**The Panel Overlooked Affirmed Findings of Fact that 60/40
Establishments Do Not Cause Secondary Effects**

The panel apparently overlooked or discounted the *affirmed findings* in New York State Supreme Court after Justice Louis B. York personally inspected most of these locations and expressly found, after holding a full trial, that 60/40 businesses were *not* causing any negative secondary effects.  *See For The People Theatres of NY, Inc. v. City of New York,* 38 Misc.3d 663 (Sup. Ct. N.Y. Co. 2012), aff'd, 131 A.D.3d 279 (1st Dept. 2015), *rev'd on other grounds*, *For The People Theatres of N.Y., Inc. v. City of New York,* 29 N.Y.3d 340 (2019).[3]

**The Panel Overlooked that the City has the Burden of Proving that the
Challenged Restrictions Do Not Burden Substantially More Speech than
Necessary to Further Governmental Interests Unrelated to the Suppression
of Free Speech**

The panel appears to have overlooked the long-standing rule, most recently reiterated in *Free Speech Coalition v. Paxton,* No. 23-1122 (June 27, 2025), citing *Turner Broadcasting System, Inc. v. FCC,* 520 U.S. 180, 189 (1997), that, even in intermediate scrutiny cases, the government has the burden of proving that the challenged restrictions "*do not burden substantially more speech than necessary* to further" the government's identified interests. (Emphasis added.)  Here, the panel

---

[3] The New York Court of Appeals does not have jurisdiction to review affirmed findings of fact. *See* Karger, *The Powers of the New York Court of Appeals* (3rd Ed.), §81.

did not explain why, given the express fact-findings by Justice York, enforcement of the 2001 Amendments would not burden substantially more speech than necessary.

The panel also seems to have misapprehended the challenge to the discriminatory "mandatory termination" provisions imposed on adult uses based on the *content* of the entertainment or adult materials offered, protected by the First Amendment. The panel did not address this claim as one implicating free expression and requiring *either* intermediate scrutiny (i.e., that the challenged restrictions *do not burden substantially more speech than necessary*) or "how speech will fare". Rather, the panel misconstrued this claim as not arising under the First Amendment and erroneously upheld these provisions under rational basis review.[4]

---

[4] Even assuming, *arguendo,* that rational basis is the correct standard of review of this claim, the record here is barren of any rational basis on which to require mandatory termination of adult uses, in light of the affirmed findings of the State Courts that this form of business does *not* cause negative secondary effects.

## Reasons for Rehearing En Banc

The full Court should review this case because it presents the following questions of exceptional importance:

### The Current Purpose Issue

In *TJS of New York, Inc. v. Town of Smithtown*, 598 F.3d 17, 19 (2d Cir. 2010), this Court left open the important constitutional question of whether the justifications for restrictions on expression should be re-evaluated when a great deal of time has passed, and when there have been substantial changes in the underlying facts since the law was enacted. The *TJS* Court found that the second prong of the *Renton* test—whether a zoning ordinance that impacts expression allows for reasonable alternative avenues of communication—must be considered when the law is being enforced, not just when it was enacted.

Since issues with land use are constantly fluid, the constitutionality and necessity for specific zoning laws are always subject to renewal and reconsideration. Indeed, "ordinarily the validity of a zoning regulation depends on the facts *existing at the time such validity is questioned*." James Buchwalter, *Validity of Zoning Laws and Ordinances as Dependent on Conditions, Circumstances, and Particular Property*, 101A C.J.S. Zoning and Land Planning §18 (emphasis added).

14

Courts have historically focused on the "practical and continuing impact of zoning regulations on adult entertainment uses *as applied*, rather than on their facial constitutionality when passed." *TJS*, 598 F.3d at 23, citing *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), and *Renton*. As recognized by this Court in *TJS*, the "*Renton* Court repeatedly phrased its inquiry in the present tense, thereby suggesting that it considered the significant time to be that of the challenge, not of the law's passage." 598 F.3d at 24.

The *TJS* court—addressing the specific issue before it—found that the First Amendment does "not allow courts to ignore post-enactment, extralegal changes and the impact they have on the sufficiency of alternative avenues of communication." *Id.* at 23. Similarly, Plaintiffs-Appellants urge here that courts should not ignore post-enactment, extralegal changes and the impact they have on the governmental interest.

This question is of exceptional significance here, where the changes over the last 24 years have radically altered the entire City and called into doubt the need for this aged restriction on businesses offering adult expression to consenting adults.

### The How Speech Will Fare Issue

*En banc* review is also warranted because Justice Kennedy (whose *Alameda* concurrence was the narrowest opinion supporting the judgment) disagreed with the *Alameda* plurality to the extent it failed to analyze how speech will actually fare if the challenged restrictions are implemented and the panel likewise failed to perform this analysis. The *en banc* court should address and resolve the practical implications of that requirement because it affects the constitutional evaluation of *every* adult zoning ordinance considered in the Second Circuit.

### The Content-Neutral Issue

*En banc* review is also warranted because the panel (Order at 4) concluded that adult ordinances are content-neutral, rejecting the view of a *majority* of the Supreme Court in *Alameda*; a majority of justices concluded that they are either "content-based" or "content correlated." *See Alameda*, 535 U.S. at 448 (Kennedy, J. concurring: "The ordinances are content based, and we should call them so."); *id.* at 457 (Souter, J., dissenting: "It would in fact make sense to give this kind of zoning regulation a First Amendment label of its own, and if we called it content correlated, we would not only describe it for what it is, but keep alert to a risk of content-based regulation that it poses."). The mandatory termination provisions challenged here apply *only* to those non-conforming commercial businesses which offer adult expression. Thus, they are clearly content-based regulation and should be subject to

16

heightened scrutiny. At the very least they should have been analyzed under Justice Kennedy's "how speech will fare" test, since removing these few remaining businesses would very substantially and immediately restrict the public's access to expression.

*En banc* review is also warranted because the panel's decision conflicts with the following decisions of the United States Supreme Court:

A. *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485 (1984), since the decision does not appear to be the result of a de novo "independent determination of the whole record" to see whether the challenged provisions "constitute a forbidden intrusion on the field of free expression."

B. *Abie State Bank v. Weaver,* 282 U.S. 765 (1931), and *United States v. Carolene Products Co.,* 304 U.S. 144 (1938), since the decision does not take into account that the facts on which the 2001 Amendments were predicated "have ceased to exist."

C. *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 440 (2002) (Kennedy, J., concurring), since the decision does not address "how speech will fare" if the 2001 Amendments are upheld and enforced.

D. *City of Renton v. Playtime Theatres, Inc.,* 479 U.S. 41 (1986), and *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425 (2002) (plurality), since the decision fails to give any weight to the affirmed findings of the New York

State Court that authoritatively found that 60/40 businesses, as allowed by the 1995 Amendments, do not cause negative secondary effects.

      E.      *Turner Broadcasting Systems, Inc. v. FCC*, 520 U.S. 180 (1997), and *Free Speech Coalition v. Paxton,* No. 23-1122 (June 27, 2025), since the City did not *even* attempt to prove in this case that the challenged restrictions "do not burden substantially more speech than necessary" to minimize or eliminate negative secondary effects (i.e., the "important governmental interests unrelated to the suppression of free speech" which the 2001 Amendments were allegedly intended to further).

      F.      *FW/PBS v. City of Dallas*, 493 U.S. 215 (1990), since the panel did not address the constitutionality of the prior restraints in the Department of Buildings' permitting scheme—a wholly separate constitutional issue raised, extensively briefed, and argued by Plaintiffs-Appellants.

The panel decision also conflicts with the Ninth Circuit's decision in *Young v. Simi Valley,* 216 F.3d 807 (9th Cir. 2000), holding that the ordinance challenged in that action was facially invalid under the First Amendment as depriving potential adult business owners of reasonable alternative avenues of communication, to the extent it allowed private parties to effectively veto an application by quickly obtaining, at any time during the lengthy adult business permitting process, an over-the-counter zoning permit for a sensitive use within the buffer zone around the

applicant's site. Here, Plaintiffs-Appellants' *Simi Valley* claim (like many others) was swept up in the conclusory note that the panel found all issues not addressed to be "without merit." Order at 10.

## Conclusion

For all these reasons, this Petition should be granted; the matter redetermined; the judgment reversed; the matter remitted to the District Court for the entry of judgment declaring the 2001 Amendments unconstitutional and partially, temporarily, or totally enjoining their enforcement; and such other and further relief as may be just.

Dated:        July 22, 2025

Respectfully submitted,

/s/ Jerome Mooney
**Jerome Mooney, Esq.**
**G. Randall Garrou, Esq.**
Weston, Garrou & Mooney
*Attorneys for Appellants*
*Club at 60th Street, et al.*
12121 Wilshire Boulevard
Los Angeles, California 90025
(310) 442-0072

/s/ Edward S. Rudofsky
**Edward S. Rudofsky, Esq.**
Zane and Rudofsky
*Attorney for Appellants*
*59 Murray Enterprises, Inc., et al.*
Five Arrowwood Lane
Melville, New York 11747
(917) 913-9697

19

/s/ Jeffrey M. Nye
**Jeffrey M. Nye, Esq.**
SSP Law, Co., LPA
*Attorney for Appellants*
*689 Eatery, et al.*
7373 Beechmont Ave
Cincinnati, Ohio 45230
(513) 533-6714

/s/ Erica T. Dubno
**Erica T. Dubno, Esq.**
Fahringer & Dubno
*Attorney for Appellants*
*557 Entertainment Inc., et al.*
43 West 43rd Street
New York, New York 10036
(212) 319-5351

<u>Word-Count Certification</u>

The undersigned hereby certifies that the foregoing Petition contains 3,890 words as auto-counted by the word-processing program on which the document was prepared.

Dated:      July 22, 2025

*/s/ Erica T. Dubno*
**Erica T. Dubno, Esq.**
Fahringer & Dubno
*Attorney for Appellants*
*557 Entertainment Inc., et al.*
43 West 43rd Street
New York, New York 10036
(212) 319-5351

# SUMMARY ORDER

24-621 (L)
Murray Enters. v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand and twenty-five.

PRESENT:  Steven J. Menashi,
          Myrna Pérez,
          Alison J. Nathan,
               *Circuit Judges.*

_____

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 Murray Corp., DBA New York Dolls, AAM HOLDING CORP., DBA Private Eyes, JNS VENTURES LTD, DBA Vixen, TWENTY WEST PARTNERS, INC., DBA Wonderland, 689 EATERY, CORP., DBA Satin

Dolls, 725 EATERY, CORP., Substituting for MLB
Enterprises, Corp., DBA Platinum Dolls,

<em>Plaintiffs-Appellants</em>,

v.

Nos. 24-621 (Lead),<br>24-623 (Con),<br>24-636 (Con),<br>24-640 (Con)

CITY OF NEW YORK, HON. ERIC ADAMS, as
Mayor of the City of New York, JAMES S. ODDO,
as the Commissioner of Buildings, DEPARTMENT
OF BUILDINGS OF THE CITY OF NEW YORK,

<em>Defendants-Appellees.</em>*

---

*For Plaintiffs-Appellants*:      EDWARD S. RUDOFSKY, Zane and Rudofsky, Melville, New York; ERICA T. DUBNO, Fahringer & Dubno, New York, New York; G. RANDALL GARROU (Jerome Mooney, *on the brief*), Weston, Garrou & Mooney, Los Angeles, California; Jeffrey M. Nye, Stagnaro, Saba & Patterson, Cincinnati, Ohio.

*For Defendants-Appellees*:      ELINA DRUKER (Richard Dearing, Ingrid R. Gustafson, *on the brief*), *for* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, New York, New York.

---

\* The Clerk of Court is directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

The plaintiffs-appellants are companies in the adult entertainment business. Eight of the plaintiffs operate or lease space to strip clubs and topless bars, and the other six plaintiffs rent or sell adult books and videos. In 1995, New York City adopted new zoning laws that restrict where adult businesses may operate. The regulations did not reach so-called "60/40" establishments, those businesses at which less than 40 percent of the floorspace or less than 40 percent of a store's stock-in-trade does not feature adult entertainment or media. The plaintiffs operate businesses of this type and were not affected by the City's 1995 regulations. In 2001, the City amended its zoning laws to limit or to remove the 60/40 rule, bringing the plaintiffs within the reach of the restrictions for adult establishments under the zoning laws. Following a bench trial, the district court held that the 2001 amendments did not violate the Constitution and entered judgment for the defendants. *See 689 Eatery Corp. v. City of New York*, 716 F. Supp. 3d 88 (S.D.N.Y. 2024).

On appeal, the plaintiffs argue that the 2001 amendments violate the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The bookstore plaintiffs also raise a challenge under the Due Process Clause of the Fourteenth Amendment. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

# I

The plaintiffs argue that the City's 2001 amendments violate their rights under the First Amendment. We disagree.

While the First Amendment protects adult expression, it also allows a municipality to regulate adult entertainment establishments. *See TJS of N.Y., Inc. v. Town of Smithtown*, 598 F.3d 17, 20-21 (2d Cir. 2010). As part of its zoning power, a city may prohibit adult establishments from operating in certain areas. *See Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). Even in areas where adult-oriented businesses are allowed, a city may prohibit such businesses from operating close to churches, parks, schools, residential areas, or other adult establishments. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 44, 54 (1986).

The Supreme Court has explained that a city may regulate adult establishments in this way to attempt to minimize the harmful "secondary effects" that may accompany adult-oriented businesses, including crime, decreased property values, and urban decay. *Alameda Books*, 535 U.S. at 434 (plurality opinion). To exercise this authority consistent with the First Amendment, a city cannot "use[] the power to zone as a pretext for suppressing expression." *Renton*, 475 U.S. at 54 (internal quotation marks omitted). But it can restrict the permissible locations of adult businesses to "preserv[e] the quality of life in the community at large." *Id.* "This, after all, is the essence of zoning." *Id.*

To determine whether a zoning law complies with the First Amendment, we consider three issues. First, we ask whether the zoning ordinance "ban[s] adult [establishments] altogether" or "merely require[s] that they be distanced from certain sensitive locations." *Alameda Books*, 535 U.S. at 434 (plurality opinion). If the latter, the regulations operate like time-place-and-manner regulations of speech. Second, if the zoning ordinance does not ban adult businesses altogether, we ask whether the ordinance is content-based or content-neutral. An ordinance applying solely to adult establishments is not content-based so long as it is "aimed" at "the secondary effects" of those establishments "on the surrounding community." *Renton*, 475 U.S. at 47 (emphasis omitted). Third, if the zoning ordinance is content-neutral, it does not violate the First Amendment if the city can show that the "ordinance is designed to serve a substantial governmental

interest and allows for reasonable alternative avenues of communication." *Id.* at 50.

This is not the first time we have considered the constitutionality of the zoning laws that New York City applies to adult businesses. In *Buzzetti v. City of New York*, we examined the City's 1995 zoning amendments that regulated adult establishments, defined as those businesses in which a "substantial portion" of the establishment was (1) used as an "adult book store" or (2) as an "adult eating or drinking establishment" that "regularly feature[d]" explicit entertainment. 140 F.3d 134, 136 (2d Cir. 1998). We held that the 1995 zoning laws did not ban adult businesses altogether and were not "aimed at suppressing" unfavorable viewpoints. *Id.* at 140. Instead, the zoning laws targeted "the negative impact" of adult establishments "on the surrounding community." *Id.* New York City had presented sufficient evidence that adult establishments could cause negative effects such as crime, decreased property values, and urban decay, and we explained that mitigating those effects qualifies as a "substantial governmental interest[]." *Id.* Finally, the City had shown that there were 500 "alternative sites" available for the 177 exiting adult establishments that would be affected by the new zoning regulations. *Id.* at 141. As a result, we held that the City's zoning laws did "not violate the First Amendment." *Id.*

Those holdings largely resolve this case. The 2001 amendments modified the definition of an adult establishment, but in doing so the amendments did not alter the preexisting regulatory framework. In the 2001 amendments, the City determined that whether a business qualified as an "adult eating or drinking establishment" would not depend on the amount of floor space devoted to adult entertainment. If an eating or drinking establishment "regularly features" such entertainment, it qualifies as an "adult eating or drinking establishment" regardless of the square footage the entertainment occupies. N.Y.C. Zoning Resol. § 12-10(1)(b); *see also 689 Eatery Corp.*, 716 F. Supp. 3d at 130. Similarly, the 2001 amendments determined that a bookstore with certain features—such as booths for viewing pornographic videos—qualifies as an adult bookstore under the

zoning laws regardless of the percentage of floor space or stock the business devotes to non-adult entertainment. *See* N.Y.C. Zoning Resol. § 12-10(2)(d); *689 Eatery Corp.*, 716 F. Supp. 3d at 131.

These modified definitions do not alter our prior conclusions about the City's zoning scheme. Nothing in our earlier analysis required the City to define an adult eating or drinking establishment by reference to the amount of floor space or stock allocated to adult entertainment. We did not imply, for example, that the City's zoning scheme would be unlawful if it reached businesses in which lap dances or strip teases take place in one third of the accessible floor space instead of one half. And our holding in *Buzzetti* did not require the City to allow a bookstore with "peep booths" to operate next to schools and churches simply because the bookstore had non-adult titles in its inventory. *689 Eatery Corp.*, 716 F. Supp. 3d at 133. *Buzzetti* upheld the City's zoning amendments because the amendments aimed at mitigating the harmful effects of adult businesses and because the amendments offered reasonable alternative sites where adult businesses could relocate. None of those conclusions are undermined by the City's modified definitions. *See Buzzetti*, 140 F.3d at 141.

In any event, the City has offered valid explanations for the changes. The City found through its enforcement efforts that the original zoning amendments allowed for "superficial and sham compliance." *689 Eatery Corp.*, 716 F. Supp. 3d at 128. For example, to ensure that its adult stock remained under 40 percent, many adult bookstores would purchase boxes of "old instructional videos, kung-fu or karate films, cartoons and the like, which are inexpensive to purchase in bulk," and then "haphazardly" stock those materials or simply leave the boxes "open[] on the floor." *Id.* at 125. And the "artificial separation" between adult and non-adult sections at adult eating and drinking establishments led to "absurd" results. *Id.* (alteration omitted). Even if a topless bar or strip club featured non-adult entertainment or dining options, those features did not alter the nature of the establishment because no customers patronized the establishment without regard to its adult character. *See* Department of City Planning Zoning Amendment Application at 8-9, *689 Eatery Corp. v. City of New York*, No. 02-CV-04431 (S.D.N.Y.

May 9, 2022), ECF No. 162-5. The City reasonably concluded that a bookstore with peep booths remains an adult bookstore even if it offers boxes of kung fu movies, and a strip club remains a strip club even if it has a billiards room upstairs. As the New York Court of Appeals has explained:

> A store that stocks nonadult magazines in the front of the store but contains and prominently advertises peep booths is no less sexual in its fundamental focus just because the peep booths are in the back and the copies of Time magazine in the front. The same is true of the adult eating and drinking establishments. A topless club is no less an adult establishment if it has small signs and the adjoining comedy club, seating area, or bikini bar is easy to access.

*For the People Theatres of N.Y. Inc. v. City of New York*, 29 N.Y.3d 340, 361 (2017). The First Amendment does not prohibit that commonsense approach.

When it proposed the 2001 amendments, the City determined that the changes were necessary to address "superficial and formalistic measures" by adult businesses "which do not alter the character of the establishments." CEQR Negative Declaration and Environmental Assessment Statement at 2, *689 Eatery Corp. v. City of New York*, No. 02-CV-04431 (S.D.N.Y. May 9, 2022), ECF No. 162-5. Variations in floor space or stock did not affect the businesses' "predominant, on-going focus on sexually explicit materials or activities." *Id.* The City could "reasonably believe[]" that such establishments will present the same problems as other adult venues. *City of Renton*, 475 U.S. at 51. And the City has once again provided evidence that there are over a thousand available lots where the thirty-two affected establishments could legally operate—including 204 lots that could be used simultaneously while maintaining the required buffer between each adult establishment. *See 689 Eatery Corp.*, 716 F. Supp. 3d at 169-70; Consolidated Statement of Stipulated Facts at 78, *336 LLC v. City of New York*, No. 18-CV-3732 (S.D.N.Y. May 25, 2023), ECF No. 168-1. We therefore adhere to our precedent holding that the zoning laws, even as modified by the 2001 amendments, are "content-neutral time, place, and manner regulation[s], [are] justified by

substantial government interests and allow[] for reasonable alternative avenues of communication, and, accordingly, do[] not violate the First Amendment." *Buzzetti*, 140 F.3d at 141.[1]

## II

The plaintiffs argue that the 2001 amendments violate the Equal Protection Clause of the Fourteenth Amendment by treating adult establishments differently from other regulated entities. This claim restates the First Amendment claim and likewise fails.

The Fourteenth Amendment prohibits a state from "deny[ing] to any person … the equal protection of the laws." U.S. Const. amend. XIV, § 1. Laws that turn on suspect classifications or that impinge on fundamental rights warrant heightened scrutiny, but others receive only rational-basis review. *Romer v. Evans*, 517 U.S. 620, 631 (1996). States must "treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Adult establishments are not a suspect class under the Fourteenth Amendment, but the 2001 amendments do affect a fundamental right—the freedom of speech. As explained above, however, the zoning scheme satisfies the heightened scrutiny that the First Amendment requires in this context. To the extent that the plaintiffs assert an equal protection claim that does not depend on a violation of the First Amendment, rational-basis review applies. *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023) (applying rational-basis review to a law burdening free speech "because it does not violate Plaintiffs' First Amendment rights").

The 2001 amendments satisfy rational-basis review. The City has a legitimate interest in curbing the negative secondary effects associated with adult establishments, and the zoning requirements are a rational means of advancing

---

[1] For the purposes of a facial challenge, the plaintiffs have not met the burden of showing that the 2001 amendments "prohibit[] a substantial amount of protected speech … relative to the [amendments'] plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293 (internal quotation marks omitted).

that interest. *See Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) ("Rational basis review requires the City to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal.").

III

The bookstore plaintiffs argue that the 2001 amendments violate the Due Process Clause of the Fourteenth Amendment. According to the bookstore plaintiffs, the amendments violate the substantive due process right of the bookstores to use their existing lots as adult bookstores. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998). We disagree.

While framed as a substantive due process challenge, the bookstore plaintiffs are again repeating the claim that the 2001 amendments violate the First Amendment. But "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Southerland v. City of New York*, 680 F.3d 127, 142-43 (2d Cir. 2012) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000)); *see also Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019). Having rejected the First Amendment claim, we likewise reject the plaintiffs' substantive due process argument. *See 20 Dogwood LLC v. Village of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) ("This more specific constitutional protection, rather than the more general notion of substantive due process, thus provides the framework for evaluating Plaintiffs' claims.").

*    *    *

9

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court